[No. 20481.  Department Two.  September 22, 1927.]

THE STATE OF WASHINGTON, *Respondent*, v. GABRIEL R. BOZOVICH, *Appellant*.[1]

[1] HOMICIDE (75)—CORPUS DELICTI—EVIDENCE—SUFFICIENCY.  In a prosecution for murder, the death of the deceased from bullet wounds is sufficiently shown, without medical testimony, by evidence that he, in apparent health, was shot four times with a 38 calibre revolver, fell unconscious on the sidewalk and lay there, a witness stating that he was dead.

[2] SAME (131-1)—APPEAL—HARMLESS ERROR—ADMISSION OF EVIDENCE.  Where, in a murder case, there was no issue as to the killing, the accused claiming that he shot deceased in self-defense, error in the admission of improper evidence as to the cause of death is harmless.

[3] CRIMINAL LAW (236, 236-3)—TRIAL—MISCONDUCT OF PROSECUTION—PRESENTATION OF EVIDENCE.  It is highly prejudicial and improper conduct on the part of the prosecutor, depriving the accused of a fair trial, to inject into the case, upon cross-examination of character witnesses for the defense, by persistent questions, the fact that the prosecutor had information as to other serious crimes committed by the accused, after the witnesses had repeatedly denied any information thereof, the supposed offenses being of a nature to seriously discredit the testimony given by the accused, and the cross-examination showing disregard of the proper purpose thereof.

[4] SAME (481)—REVIEW—HARMLESS ERROR—CONDUCT OF COUNSEL.  Misconduct of the prosecuting attorney, preventing the jury from fairly weighing the evidence cannot be cured by instructing the jury that the prosecutor's questions were not evidence and should be disregarded.

Appeal from a judgment of the superior court for King county, Moriarty, J., entered April 15, 1926, upon a trial and conviction of murder.  Reversed.

*John J. Sullivan* and *John E. Ryan, Jr.,* (*V. G. Frost,* of counsel), for appellant.

*Ewing D. Colvin* and *Eugene Meacham,* for respondent.

[1] Reported in 259 Pac. 395.

ASKREN, J.—This is an appeal from a conviction of murder in the second degree. The appellant, with one Milton Chaousis and some others, were gambling on the afternoon of January 15, 1926. Appellant accused Chaousis of cheating and a fight ensued. Later, when leaving the room, appellant shot Chaousis four times, killing him. Appellant was charged with murder in the first degree, and upon trial the jury returned a verdict of second degree murder.

[1] It is urged that a challenge should have been sustained to the evidence at the close of the state's case, because there was no evidence that death came from the bullet wounds. Witnesses for the state testified concerning the shooting, and one witness testified that the deceased as he lay on the sidewalk was dead. But, it is said, this witness made no examination of the body of the deceased and that his statement was a mere supposition. With this we are unable to agree. If the question of what caused the death were really a debatable issue in the case, this testimony would probably not be of great value. But, as against no opposed testimony, evidence that deceased, in apparent health, was shot four times with a 38 calibre revolver, fell unconscious to the sidewalk, and a statement by a witness that he lay there dead, is surely *prima facie* evidence of that fact. While it is customary, in cases of this character, to introduce medical witnesses to establish the fact, proof thereof is not confined to that character of testimony. There was no issue in this case as to what caused death. Death was conceded throughout the trial, and the appellant did not deny the killing, but claimed that it was done in self-defense.

[2] It is next urged that prejudicial error was committed in permitting Dr. Corson, King county coroner, to testify from a report of the death made by a Dr.

William Jones, that deceased came to his death as a result of gunshot wounds.

It appears that counsel for the state, fearing that the objection made by appellant's counsel, and which we have just disposed of, might be meritorious, offered to prove this report of death, in order to have the record complete upon the point. It appears, however, that the witness Corson did not know the handwriting of Dr. Jones, and under no circumstances disclosed by the record was the evidence competent. But, while this was error, it was not in any sense prejudicial. The only point sought to be proved was the physician's report as to the cause of death. This was offered in rebuttal. But prior thereto, the appellant had testified to the shooting and its reasons, and it was therefore no longer an issue in the case. If it had been an issuable point, the evidence would have been prejudicial. Since it was not, there could be no more than harmless error in admitting this testimony.

It is next urged that the verdict is contrary to the evidence. This assignment of error raises the question of the deductions to be drawn from the testimony of the various witnesses. There is no need to set out even a portion of it. We have read the more than six hundred pages of the statement of facts and find that there was ample evidence, if believed by the jury, to sustain the verdict. The evidence was in conflict, but it was the jury's province to choose the testimony it would believe.

[3] The most serious question in this case revolves around the claim of misconduct of the prosecutor, while cross-examining certain character witnesses offered by appellant. When the witness Flood, a state service officer of the American Legion, testified that he had known the appellant since 1922, and that his general reputation since that time as being a peaceable and

law-abiding citizen was good, his cross-examination took a͵ wide field. He was asked concerning his knowledge of certain events in Alaska, prior to his acquaintance, in such a way as to get before the jury, in the most prejudicial manner, facts which the prosecutor evidently had some information of. The cross-examination is too long to be set out in this opinion, but a sample of the questions will show the method used.

"Q. Have you heard about his nearly killing a man in Alaska? MR. SULLIVAN: Now, just a minute. I certainly object to that, and counsel knows it is not proper. I asked for the general reputation since 1922. I object to that as not proper cross-examination, and ask Your Honor to rule on it. THE COURT: Objection sustained."

And again:

"Q. Did any of the people that you have talked to tell you that he had so seriously injured a man in Alaska— MR. SULLIVAN: The court has just ruled that it is improper for counsel to go into that. I object as not proper cross-examination—an attempt to put something by reason of his statement before this jury that is prejudicial, and I object to it as not proper cross-examination. THE COURT: Mr. Sullivan, the court does not know the question until it is asked. Q. Did any of these people that you talked with tell you that he so seriously injured a man— MR. SULLIVAN: Just a minute. I feel it my duty, and I say with all sincerity, and I want the record to show, that unless counsel can show that something has happened since 1922 that would tend to deprecate the character of this defendant that it is improper, and at this time I ask the court to instruct him to base his time since 1922, because that is the time, since that time, that I asked the questions, and otherwise it is improper, and I object to it on that ground, that he must do that. Unless he does it, it is improper. THE COURT: Proceed. Objection overruled. Exception allowed. Q. Have you heard that he so seriously injured a man in a fight which he started in Alaska that that man was confined to the hospital for more

than six months? A. I heard nothing about that whatsoever— Mr. Sullivan: Now I object to that. I want the record to show that I am objecting to all of this testimony as being immaterial and irrelevant and neither proving nor disproving any fact in this case, and not proper cross-examination, and not being based upon an alleged event that is supposed to have occurred since 1922, and no mention of any date being made by the prosecutor. Note an objection to Your Honor's ruling as being absolutely prejudicial, incompetent and improper.

"Q. Did any of these people that you talked to tell you of that circumstance? A. No. Q. Or a circumstance like that? A. That ever came to me. Q. Have you heard, and did any of these people tell you, that as a result of this circumstance which I have just mentioned, that this defendant was convicted on a charge of causing grievous bodily harm; that he was sentenced to nine months at hard labor as Gabriel Bozovich, number 56, in August, 1913, in Dawson, Yukon Territory? Mr. Sullivan: Same objection, on the same grounds. And now Your Honor can see just what the method of counsel— The Court: I sustain the objection."

Finally, the witness was asked if he had ever heard of the appellant being convicted of a crime, to which he answered "No."

A little later he was asked concerning improper relations the appellant was supposed to have had with a young girl, as follows:

"Q. Did you ever talk with a girl by the name of Frances Radich, who lives at 3802 Genessee street, since May 2, 1924? A. Never talked to her at all, to my knowledge. Q. Did anyone ever tell you, any of these people that you talked with, that this defendant, about whom you have just testified, had made indecent and improper advances to this girl by the name of Frances Radich, and when she repulsed him and rebuked him, he brutally assaulted and beat her, and was subsequently arrested for that offense and called into

the prosecuting attorney's office to talk to Mr. R. L. Bartling?

"Mr. Sullivan: I object as neither proving nor disproving any fact in this case, and not proper cross-examination.

"The Court: Objection sustained to the form of the question. I think you can limit your question in much shorter form, without having matters— Q. Did you ever hear of him being charged with misconduct, with the crime of assault in the third degree? Mr. Sullivan: I object to that, if Your Honor please; same objection. The Court: Objection overruled. Exception allowed."

It will be noticed that the witness had said that he had never talked with the girl in question; but, in spite of this fact, the next question was framed in such a way as to place the appellant in a most prejudicial light before the jury.

When the witness Mendenhall had testified that she was employed by the United States Veteran's Bureau, and knew the appellant since 1922, and that his reputation was good, she was subjected to a like cross-examination. When she had answered that she had never heard of the appellant's association with a girl named Frances Radich, the following question was asked:

"Q. Did anyone with whom you talked ever tell you of this defendant, Gabriel Bozovich, on the first day of May, 1924, having called upon Frances Radich and having made indecent and improper advances to her, and upon being repulsed, of having cruelly and brutally beaten her, and that subsequently a warrant and complaint for his arrest was issued? Did you ever hear that? Mr. Sullivan: Just a minute. Same objection, if Your Honor please; and on the further ground that it attempts to prove by hearsay testimony that a crime has been committed. The record itself is the best evidence. It is not proper cross-examination. Mr. Meacham: The court has already instructed the jury that my questions are not evidence. The Court: Ob-

jection overruled; exception allowed. Q. Did you ever hear that, Mrs. Mendenhall? A. No, sir, Mr. Meacham.''

The whole tenor of the cross-examination shows disregard of the purpose for which such questions are asked, namely, to ascertain whether the witness has information contrary to the testimony given in chief—not to discredit the person on trial. *State v. Presta*, 108 Wash. 256, 183 Pac. 112; 16 Cyc. p. 1280.

[4] The state argues that, since the court told the jury that the questions were not evidence, it will be presumed the jury disregarded the statements contained therein. This is the general rule on appeal. But this rule has never been extended to the point where we have said that every prejudicial question can safely be said to have been effectually erased from the jury's consideration. A reading of the record convinces us that no statements of the court could have removed the blighting effect of questions indicating a bestial nature coupled with brutal assault upon a female child. The normal juror finds it hard—nay almost impossible—to weigh fairly the evidence offered by one claimed by the prosecutor to be of such a character.

We conclude that appellant was prejudiced by the questions and did not have that fair trial guaranteed by the law.

Judgment reversed.

MACKINTOSH, C. J., HOLCOMB, TOLMAN, and MAIN, JJ., concur.