[No. 1571-1.    Division One—Panel 1.    February 26, 1973.]

THE STATE OF WASHINGTON, *Appellant*, v. ROBERT DALE CHILDS, *Respondent*.

*Earl F. Angevine, Prosecuting Attorney*, and *Gilbert E. Mullen, Chief Deputy*, for appellant.

*Griffin, Bortner & Platis, Inc., P.S.* and *Harry B. Platis*, for respondent.

SWANSON, C.J.—When witnesses and other evidence indicate that a man walking across a street was hit by the

defendant's car and immediately after the impact was found lying dead in the street, is there sufficient evidence for a jury in a negligent homicide prosecution to determine whether or not the defendant driver caused the victim's death? That is the primary question presented in this appeal.

Defendant Childs was brought to trial on a charge of negligent homicide by means of an automobile. The trial judge, at the close of the state's case and after an appropriate challenge to the sufficiency of the evidence, entered the following conclusion of law:

> There is a total and complete lack of any proof whatsoever of a causal connection between the accident and the death, and it is improper to put it to the jury to have them speculate and arrive at some conclusion.

Conclusion of law No. 1. Thereafter, the court granted the defense motion to dismiss. The state appeals and assigns error to the trial judge's refusal to submit the case to the jury and to his entry of the order of dismissal.

The defendant was the driver of a Volkswagen automobile which struck an elderly man in a crosswalk on a street in Anacortes, Washington, on the evening of October 29, 1971. The pavement was dry, and there were no skid marks, but eyewitnesses indicated that Childs never slowed down or swerved and that his speed was about 40 miles per hour when his vehicle struck the victim. A medical doctor called to the scene observed that the victim had a head injury and established he was dead. Several lay witnesses described the decedent's injuries, but the trial court determined that the testimony presented failed to establish a causal connection between the accident and the death of the victim.

The reasoning which perhaps best explains the trial court's conclusion is contained in its formal findings of fact which state in part:

> The doctor who attended the victim as he lay on the road following the collision, when asked specifically if he knew what caused the death, said that he did not know

what caused the death. Not that he was uncertain or that he could not have arrived at some conclusion, but that he himself didn't know.

Finding of fact No. 2.

That if a trained medical man summoned to attend the deceased immediately following the accident did not know what caused the death and from his examination of the man could not have formed an opinion as to what caused the death, it is improper to put it to the jury to have them speculate and arrive at some conclusion that the doctor himself could not form.

Finding of fact No. 3.

The Court finds absolutely no evidence other than the fact that the man is dead. There is no opinion with respect to causal connection. There was no description of the wounds sufficient to supply the causal connection. The only showing is that before the accident he was alive and that following the accident he was dead.

Finding of fact No. 6.

■ ■ Broadly stated, the sole question presented by this appeal is whether the state presented substantial evidence of a causal connection between the collision of the defendant's automobile with the decedent and the death of the person struck by the automobile. The legal principles pertinent to a resolution of this question are not in dispute. As the trial court recognized, a challenge to the sufficiency of the evidence involves no element of discretion and all evidence and inferences arising from such evidence must be considered in a light most favorable to the nonmoving party. As stated in *State v. Randecker*, 79 Wn.2d 512, 487 P.2d 1295 (1971) at 515, 517:

> In short, if there is *substantial evidence* the issue must be resolved by the jury and not by the court. . . .
>
> . . .
>
> A trial court may not *weigh the evidence* to determine whether the necessary quantum has been produced to establish *some proof* of an element of the crime. It may only test or examine the *sufficiency* thereof. [Citation omitted.] The jury is the sole and exclusive judge of the weight of evidence, and of the credibility of witnesses.

[Citations omitted.] In other words, the trial court must concern itself only with the presence or absence of the required quantum. [Citations omitted.]

Further, pertinent to the controversy in the case at bar, it is well established that proof of the cause of death does not depend solely upon expert medical testimony. As our Supreme Court observed in *State v. Engstrom*, 79 Wn.2d 469, 476, 487 P.2d 205 (1971), a negligent homicide case:

> The cause of death is a question of fact for the jury to decide from all the facts and circumstances. It is generally customary to introduce expert medical testimony to establish the cause of death; however, proof thereof need not be confined to that character of testimony. [Citations omitted.]

What are the facts and circumstances relevant to the cause of death in the case at bar when considered in a light most favorable to the state's case? A careful and comprehensive review of the evidence is contained in the trial court's memorandum opinion which states in part as follows:

> When decedent was struck, he was thrown up on the hood of the Volkswagen and there carried a distance of about 72 feet, where the car stopped and decedent fell off the hood onto the pavement.
>
> The first person to approach the decedent as he lay on the pavement was an eye witness who saw the entire accident (except the impact, which was avoided by placing her hands over her eyes). This witness was a registered nurse and was standing a few feet from where decedent was. Immediately after the decedent's falling to the pavement the nurse felt for pulse and found none and could detect no breathing. She ran for help.
>
> The nurse described the injuries as "head injuries" and that he was "bleeding". (Testimony of Mary L. Olson)
>
> Police officers arrived at the scene within a minute or so after the call was made to police department.
>
> (a) Officer Goodman examined the decedent for pulse and breathing and found none. He described the injuries as: "a hole in the head", "greyish matter exuding", and "legs twisted unnaturally under him".
>
> (b) Officer Harris observed the decedent and de-

scribed the injuries as: "A large cavity on the right side of the head with matter running out of the head", and "Legs folded where there were no joints".

(c) Officer Babarovich helped lift the decedent on to a stretcher to be placed in an ambulance, and described the injury simply as "a hole in the head".

(d) Officer Clark observed the decedent as he lay on the pavement and described the injury as "damage to the head". He saw the decedent at the funeral home where he "noticed other injuries", describing them as both legs with compound fractures.

A medical doctor was summoned immediately and appeared at the accident scene. This doctor pronounced the decedent dead after examination. He testified he could not say what the cause of death was, and had no opinion as to cause.

In addition, several photographs taken at the scene of the collision which were admitted into evidence show the victim lying in a pool of blood next to the Volkswagen automobile. Despite this evidence, the trial court was apparently persuaded that the inability of the state's medical witness to give an opinion as to the cause of death rendered the testimony of lay witnesses and the other facts and circumstances devoid of probative value, and speculative, so that it would be error to submit the question of causation to the jury.

It is true that the state's expert medical witness, Dr. Ezatola T. Rezvani, testified:

Q So, actually as a medical authority you can't tell the jury what the cause of death was, can you? A Not at all, I cannot determine.

However, such an answer must not be interpreted literally in isolation from the witness' testimony as a whole. First, it should be noted that Dr. Rezvani's answers indicate some lack of familiarity with the English language which may be explained by this testimony:

I have been educated from medical school in Iraq, Moshat. In 1962 I came to this country. I had been practicing there for two or three years and then I came to this country in '65 after I passed the examination.

Second, and more importantly, Dr. Rezvani's testimony must be considered in the context of the purpose of his examination of the victim. He testified as follows:

Q What was the purpose of your examination, to make sure — A — To make sure he was dead.

Following his examination, he certified that the victim was dead. The rest of his testimony, particularly that given on cross-examination, makes it clearer that he did not examine the victim beyond ascertaining whether or not death had occurred. When Dr. Rezvani was asked if he noticed any obvious physical injuries to the victim, he replied:

Oh, he got an injury on his head I believe, as I remember.

On cross-examination, he referred to his failure to conduct an examination of the victim's injuries by stating:

As I said to you, when I noticed he is dead I did not do further examination to find out, yes.

Further, on redirect, Dr. Rezvani explained his inability to tell the jury what caused the death:

Q Doctor, you weren't asked to determine the cause of death, were you? A I was not asked to determine the cause of death. . . . Q Why didn't you make a medical examination of the victim's head? A Because I understood he was dead so why do I do any examination of his head. So it is just my impression he is dead, why bother myself.

It thus appears that the state's medical witness examined the victim for one purpose only—to see whether he was dead or alive. Having made that determination, he looked no further. His failure or refusal to give an opinion as to cause of death under such circumstances cannot be reasonably interpreted to mean that he could not have ascertained the cause of death had he made an examination for that purpose. We are convinced beyond peradventure that the state's medical witness was simply trying to explain that he could not offer an opinion as to the medical cause of death because he had examined the victim solely for the limited purpose of ascertaining whether or not he was dead.

In short, Dr. Rezvani's testimony neither adds to nor detracts from the facts and circumstances surrounding the cause of death in this case. Such facts and circumstances may be drawn from the testimony that an automobile traveling about 40 miles per hour struck a pedestrian who was walking across a city street with such force that he was thrown up on the hood of the car and carried for a distance of about 72 feet before he fell off onto the pavement, coupled with the testimony of a registered nurse that she ran only a short distance from her place of observation to the scene where she felt for the victim's pulse but found none and could detect no breathing, together with testimony describing the victim's injuries as "head injuries," a "hole in the head," "greyish matter exuding," and "legs twisted unnaturally under him." We conclude that such testimony states sufficient facts and circumstances to amount to substantial evidence of cause of death. This conclusion is particularly appropriate when the testimony is considered in the light of the several photographs admitted into evidence which graphically show the victim lying on the street in a pool of blood adjacent to a damaged automobile.

Moreover, a question similar to that in the case at bar was presented in the early case of *State v. Bozovich,* 145 Wash. 227, 259 P. 395 (1927). In *Bozovich,* witnesses testified that Bozovich shot one Chaousis four times, and one witness testified that the victim was dead as he lay on the sidewalk. The defendant argued that a challenge to the sufficiency of the evidence should have been sustained at the close of the state's case because there was no direct evidence that the death was caused by the bullet wounds. In response to this argument, the court in *Bozovich* stated at page 228:

> But, as against no opposed testimony, evidence that deceased, in apparent health, was shot four times with a 38 calibre revolver, fell unconscious to the sidewalk, and a statement by a witness that he lay there dead, is surely *prima facie* evidence of that fact. While it is customary, in cases of this character, to introduce medical witnesses

to establish the fact, proof thereof is not confined to that character of testimony.

The order of dismissal is reversed and the cause remanded for trial.

FARRIS and JAMES, JJ., concur.