6 P.3d 1160 (2000)
141 Wash.2d 468
STATE of Washington, Petitioner,
v.
Antonio PEREZ-CERVANTES, Respondent.
No. 66719-5.
Supreme Court of Washington, En Banc.
Argued January 11, 2000.
Decided August 24, 2000.
*1161 John Ladenburg, Pierce County Prosecutor, John Martin Neeb, Deputy, Tacoma, for Petitioner.
Ronald D. Ness & Assoc., Judith Michele Mandel, John L. Cross, Port Orchard, for Respondent.
ALEXANDER, J.
Antonio Perez-Cervantes was found guilty of the second degree murder of Samuel Thomas. Perez-Cervantes appealed his conviction to the Court of Appeals, and asserted there that the trial court erroneously prevented his counsel from arguing to the jury that it was Thomas' use of illicit drugs and his failure to seek medical attention, rather than the stab wounds he received at the hand of the defendant, that caused his death. The Court of Appeals agreed with Perez-Cervantes' contention and, therefore, reversed his conviction. We reverse the Court of Appeals, concluding that there was insufficient evidence to support Perez-Cervantes' alternative causation theory.

*1162 I.
Samuel "Lucky" Thomas allegedly robbed Antonio Perez-Cervantes. Thereafter, and presumably in retribution, Perez-Cervantes and several accomplices severely beat Thomas. During the affray, Perez-Cervantes twice stabbed Thomas with a pocketknife. The stabbing punctured an artery between Thomas' ribs, which caused blood to rush into the left side of his chest cavity. The blood eventually exerted enough pressure on Thomas' left lung to dangerously restrict his breathing.
Paramedics were summoned to the scene of the incident and, on arrival, determined that Thomas should be transported to a hospital for surgery. During surgery, doctors inserted a tube into his chest and successfully evacuated the blood and air from his chest cavity. Thomas remained at the hospital for several days, until his condition stabilized sufficiently to permit him to be released. He then went home to recuperate.
Two days after he was released from the hospital, Thomas began complaining to his girl friend, Annette Holman, about his injuries. Two days later, he began experiencing chest pain and shortness of breath. When Thomas' breathing became alarmingly shallow, Holman called 911 to summon help. Unfortunately, Thomas stopped breathing before the medics arrived. Efforts to resuscitate him failed and he was pronounced dead.
An autopsy on Thomas' body indicated that, at the time of his death, he had approximately five liters of fresh blood in his left chest cavity. Pierce County medical examiner, Dr. Emmanuel Lacsina, found significant hematoma around the area of the stab wound and, therefore, ruled out any other trauma as the cause of Thomas' internal bleeding and death. He determined that Thomas' "death was due to a stab wound," with chronic obstructive pulmonary disease, which Dr. Lacsina described as "real bad emphysema," as the only "contributing factor." Verbatim Report of Proceedings (VRP) vol. II at 26, 27.
Toxicology tests revealed the presence of the "breakdown product[s]" of heroin and cocaine in Thomas' bloodstream at the time of death. VRP vol. II at 22. Consequently, Dr. Lacsina amended the death certificate to add "acute cocaine and heroin abuse as contributing factors." VRP vol. II at 27.
Thereafter, an eyewitness to the attack on Thomas informed a Tacoma police detective that Perez-Cervantes had stabbed Thomas. Based on that information, the Pierce County prosecutor charged Perez-Cervantes with murder in the second degree.
At trial, Dr. Lacsina was the only witness who testified about the cause of Thomas' death. He said that Thomas died from "internal bleeding as a result of the stab wound." VRP vol. II at 24. He also testified that cocaine use could have caused an elevation in blood pressure, leading to "re-bleeding" from Thomas' stab wound, and that heroin use could have masked the pain of this re-bleeding.
Although Dr. Lacsina opined that the levels of cocaine in Thomas' blood could be enough to cause a "heart attack or a jolt," he agreed that "the presence of blood in [Thomas'] stab wound" ruled out the possibility that Thomas' death was due to a drug overdose. VRP vol. II at 28. He, therefore, classified Thomas' death as a "homicide," rather than as "undetermined," the classification for a death by drug overdose. VRP vol. II at 43. Dr. Lacsina did not express an opinion as to whether any amount of cocaine and/or heroin could independently cause spontaneous rupturing of a drug user's vascular structure. He did indicate, however, that the toxicology test results did not change his opinion as to cause of death.
Following presentation of the evidence, the State moved to limit closing argument by defense counsel "relating to the cause of death." VRP vol. III at 9. After hearing argument on the motion, the trial judge stated: "[t]here are other contributing factors; that's the evidence, contributing factors. But there is no testimony, none has been offered, that those factors rise to the level of cause." VRP vol. III at 13 (emphasis added). He, therefore, granted the State's motion and prohibited defense counsel from arguing to the jury that Thomas' drug use or failure to seek medical care caused his death.
*1163 The trial judge instructed the jury regarding proximate cause, and intervening cause, as follows:
If you are satisfied beyond a reasonable doubt that the acts of the defendant were a proximate cause of the death of the deceased, it is not a defense that the conduct of the deceased or another may also have been a proximate cause of the death.
If a proximate cause of the death was a later independent intervening act of the deceased or another that the defendant, in the exercise of ordinary care, could not reasonably have anticipated as likely to happen, the defendant's acts are superseded by the intervening cause and are not a proximate cause of the death.
However, if in the exercise of ordinary care, the defendant should reasonably have anticipated the intervening cause, that cause does not supersede defendant's original acts and defendant's acts are a proximate cause. It is not necessary that the sequence of events or the particular injury be foreseeable. It is only necessary that the death fall within the general field of danger which the defendant should have reasonably anticipated.
Instruction 15, Clerk's Papers (CP) at 79. Perez-Cervantes' counsel did not object to the giving of this instruction.
Despite the trial court's previous ruling, Perez-Cervantes' counsel attempted to present argument that Thomas' drug use caused his death. The trial judge sustained the State's objection to the argument, indicating, "you're arguing the cause of death and I've already ruled on that." VRP vol. III at 53. The jury subsequently returned a verdict of guilty on the charge of murder in the second degree.
Perez-Cervantes appealed to the Court of Appeals, Division Two. That court reversed the trial court, concluding that because "[t]he trial court, in effect, took the question of cause of death from the jury and directed a verdict" of guilty, "Perez-Cervantes's due process rights were violated." State v. Perez-Cervantes, 90 Wash.App. 566, 573, 952 P.2d 204, review granted, 136 Wash.2d 1008, 966 P.2d 904 (1998). We granted the State's petition for review.

II.
The State asserts that the Court of Appeals wrongly concluded that the trial court erred in precluding Perez-Cervantes' counsel from arguing to the jury that Thomas' death was caused by his use of drugs, or his failure to seek medical attention. In support of this argument, it contends that "when there is no evidence ... from which the jury could find a cause of death other than the stabbing, ... no argument could be made that there was an intervening cause of death." Supplemental Br. of Pet'r at 12.
In considering the State's argument, we are not unmindful of the importance of closing argument to a defendant in a criminal case. As the United States Supreme Court has noted, it is the defendant's "last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt." Herring v. New York, 422 U.S. 853, 862, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975). We have observed that counsel must be afforded "the utmost freedom in the argument of the case" and "some latitude in the discussion of their causes before the jury." Sears v. Seattle Consol. St. Ry. Co., 6 Wash. 227, 232, 233, 33 P. 389, 33 P. 1081 (1893).
On the other hand, argument by counsel must be restricted to the facts in evidence and the applicable law, lest the jury be confused or misled. Consequently, the trial judge has discretion to restrict closing arguments. Indeed, no less authority than the United States Supreme Court has written:
The presiding judge must be and is given great latitude in controlling the duration and limiting the scope of closing summations.... He may ensure that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial. In all these respects he must have broad discretion.
Herring, 422 U.S. at 862, 95 S.Ct. 2550. Consistent with that notion, we have long held that the trial court should "in all cases... restrict the argument of counsel to the facts in evidence." Sears, 6 Wash. at 233, 33 *1164 P. 389; accord State v. Rose, 62 Wash.2d 309, 312, 382 P.2d 513 (1963); State v. Mode, 57 Wash.2d 829, 836, 360 P.2d 159 (1961). Counsel's statements also must be confined to the law as set forth in the instructions to the jury. State v. Estill, 80 Wash.2d 196, 199, 492 P.2d 1037 (1972).
Rulings by a trial court restricting the scope of argument are reviewed with a view toward determining if the trial court abused its discretion. State v. Costello, 29 Wash. 366, 371, 69 P. 1099 (1902); see also Chezum v. Parker, 19 Wash. 645, 651-52, 54 P. 22 (1898); State v. Bokien, 14 Wash. 403, 416, 44 P. 889 (1896); State v. Cecotti, 31 Wash.App. 179, 183, 639 P.2d 243, review denied, 97 Wash.2d 1020 (1982). We can say that a trial court abused its discretion "only if no reasonable person would take the view adopted by the trial court." State v. Huelett, 92 Wash.2d 967, 969, 603 P.2d 1258 (1979) (emphasis added) (citing State v. Blight, 89 Wash.2d 38, 41, 569 P.2d 1129 (1977)).
The broad issue before us is whether the trial court abused its discretion in restricting Perez-Cervantes' counsel from making an argument to the jury regarding an alternative cause of death. As noted above, the trial court determined that there was simply no evidence that either Thomas' drug use or his failure to seek medical attention superseded Perez-Cervantes' act of stabbing Thomas was a cause of death. Whether there was such evidence is the narrower question. That question must be viewed in light of the unchallenged jury instruction regarding proximate and intervening cause, which makes it clear that an independent intervening act of the deceased or another does not supersede the defendant's act unless it was the proximate cause of the victim's death or was not reasonably to be anticipated by the defendant.[1]
Although no Washington case deals with subsequent drug use by a crime victim as an alleged superseding proximate cause of death, several of our cases involve an analysis of a claim that subsequent medical malpractice was an intervening cause. One such case is State v. Little, 57 Wash.2d 516, 358 P.2d 120 (1961). The facts there were that a prison inmate was rendered comatose as a consequence of a beating at the hands of another inmate. Following the assault, the victim was transferred to Western State Hospital for neurosurgery. Witnesses testified that while at the hospital, the victim fell from his bed on several occasions. Following the victim's death, the person who administered the beating was charged with second degree murder and was convicted at trial. The defendant argued to this court on appeal that the evidence was insufficient to support an inference that his actions proximately caused the victim's death. More specifically, he contended that the chain of causation between his action and the victim's death was broken by the victim falling from the bed, as a result of the inattention of medical personnel. We disagreed that this was a superseding cause, concluding that "[m]alpractice with respect to the original injury or wound is no defense, whereas malpractice resulting in new and different injuries which prove fatal would be a defense." Little, 57 Wash.2d at 522, 358 P.2d 120. We reasoned that the victim "was in bed as a direct result of the beating administered by appellant," and thus his falls from the hospital bed did not break the chain of causation. Little, 57 Wash.2d at 522, 358 P.2d 120.
Our holding in Little was in keeping with earlier opinions from this court, which limit the viability of subsequent medical malpractice as a defense to a charge of murder. State v. Baruth, 47 Wash. 283, 296, 91 P. 977 (1907) provides a good, early example:
Where one unlawfully inflicts upon the person of another a wound calculated to endanger or destroy life, it is no defense to a charge of murder where death ensues to show that the wounded person might have recovered if the wound had been more skillfully treated.... He must show that the negligent and unskillful treatment was the sole cause of death, before he can escape the consequences of his unlawful act on this ground. *1165 Accord State v. Karsunky, 197 Wash. 87, 99, 84 P.2d 390 (1938); State v. Richardson, 197 Wash. 157, 164, 84 P.2d 699 (1938).
Interestingly, Division Two of the Court of Appeals previously issued an opinion consistent with this line of authority. State v. Yates, 64 Wash.App. 345, 824 P.2d 519, review denied, 119 Wash.2d 1017, 833 P.2d 1390 (1992). In that case, the defendant raped, stabbed, strangled, and shot the victim, rendering her permanently comatose. The victim's family and her doctors later decided to remove her feeding tube and respirator, and she subsequently died. Yates was charged with, and convicted of, first degree murder. On appeal, he argued that the trial court erred in refusing to instruct the jury that the State had the burden of proving that the removal of life support was not a new and independent cause of the victim's death. The court affirmed, holding that "[w]hen life support is removed, the cause of death is not the removal, but whatever agency generated the need for the life support in the first instance." Yates, 64 Wash.App. at 351, 824 P.2d 519 (citing In re Guardianship of Grant, 109 Wash.2d 545, 564, 747 P.2d 445, 757 P.2d 534 (1987)).
Although the aforementioned decisions deal with the question of whether negligent medical treatment of a seriously injured crime victim or the withdrawal of medical treatment from such a victim is a superseding cause of death, we considered circumstances more directly analogous to the instant case in State v. Leech, 114 Wash.2d 700, 790 P.2d 160 (1990). There, the defendant was convicted of the felony murder of a firefighter who died of carbon monoxide poisoning while fighting a fire that was caused by the defendant. The defendant argued that the evidence was insufficient to prove that his act of committing arson was the proximate cause of the firefighter's death because the firefighter negligently allowed his breathing apparatus to run out of oxygen. In holding that the arson fire was the proximate cause of the firefighter's death, we held
that the fire fighter's alleged negligence in using his breathing apparatus was not the sole cause of his death. Since his failure to use the apparatus would not have killed him had the defendant not set the arson fire, the defendant's conduct in setting the fire was a proximate cause of [the fire fighter's] death.
Leech, 114 Wash.2d at 705, 790 P.2d 160.
Under the law established in the aforementioned cases and the jury instruction given in this case, Perez-Cervantes' counsel would only have been entitled to argue that there was an alternative cause of death if the evidence admitted at trial supported a theory that some act of the victim or another superseded the stabbing as the cause of Thomas' death. Specifically, there would have to be evidence that Thomas' drug use or failure to seek medical attention caused a fatal injury independent of the stabbing, or that these acts constituted a subsequent, proximate cause that Perez-Cervantes could not have reasonably anticipated. There was no such evidence. Indeed, as we have noted, the only evidence concerning the cause of Thomas' death was the testimony of the Pierce County medical examiner, Dr. Lacsina. This evidence, even when viewed in the light most favorable to the defendant, as it must be, only supports one possible inferencethat Thomas died as a result of the stab wounds inflicted by Perez-Cervantes.
Tellingly, Dr. Lacsina distinguished his understanding of "contributing factors" from the medical cause of death as follows:
[T]he cause of death is the main process that has brought about the death of a person. It is the main thing. The main finding.
The contributing factor is sort of a, maybe if you want to call it a minor event, that would have contributed to the cause of death or added to it or complicated it. VRP vol. II at 24. In other words, Dr. Lacsina distinguished the "minor event" of Thomas' post-stabbing drug use from the actual cause of his death, the stabbing. The dissent's assertion that we "largely rest[ ]" our holding on a legal conclusion by Dr. Lacsina is mistaken. Dissent at 1169. We, of course, recognize that this testimony explicitly concerns only medical causation. It essentially forecloses any debate about legal cause, however, because neither party presented evidence of any other medical cause of *1166 death. Simply put, Dr. Lacsina provided the only evidence of cause of death. It is his testimony, in sum, that described the physical process by which Thomas diedthe blood from his intercostal arterial injury effectively crushing his lung.
Had there been evidence that Thomas' drug use had some other effect on him, such as causing a "heart attack or jolt," and that this caused his death independently of the stab wounds, counsel would have been entitled to make the argument he wished to make. There was, though, no such evidence. Dr. Lacsina did not testify that cocaine use alone could possibly cause the internal bleeding, or that Thomas died as the result of anything other than that bleeding. In fact, as we have noted, his testimony was quite to the contrary. In sum, Perez-Cervantes can point to no evidence in the record which gives rise to an inference that the sole cause of Thomas' death was his ingestion of drugs or failure to seek medical attention.
Even if there had been evidence that Thomas' drug use or his failure to seek medical attention was an intervening proximate cause of his death, it would not be a superseding cause under the jury instruction set forth above, if in the exercise of ordinary care, Perez-Cervantes should reasonably have anticipated the cause. This does not mean that the injury is foreseeable, but, rather, in the words of the instruction, that the "death fall within the general field of danger which the defendant should have reasonably anticipated." Instruction 15, CP at 79. Here, the bleeding which filled Thomas' chest cavity may have been facilitated by Thomas' drug use or failure to seek medical attention, but it was certainly within the general field of danger created by Perez-Cervantes' act of plunging his knife into Thomas.
In sum, we are satisfied that there was insufficient evidence that Thomas' death was proximately caused by his use of drugs or his failure to seek medical care.[2] In any event, neither of those causes superseded Perez-Cervantes' act as a proximate cause of Thomas' death. The trial court, therefore, did not abuse its discretion in preventing Perez-Cervantes' counsel from making that argument to the jury.

III.
Through his pro se brief and that filed by his counsel, Perez-Cervantes claims that the trial court erred in several additional respects. Because the Court of Appeals found the cause of death issue dispositive, it did not "reach the other issues raised by counsel or by Perez-Cervantes, pro se." Perez-Cervantes, 90 Wash.App. at 573, 952 P.2d 204. Having concluded that the Court of Appeals erred in reversing the trial court, we must consider these other issues.
Perez-Cervantes' counsel claims that the trial court erred in refusing to give his requested instructions on the lesser included offenses of first degree manslaughter and second degree manslaughter.[3] An instruction on a lesser included offense is warranted when two conditions are met: "First, each of the elements of the lesser offense must be a necessary element of the offense charged[, and] [s]econd, the evidence in the case must support an inference that the lesser crime was committed." State v. Workman, 90 Wash.2d 443, 447-48, 584 P.2d 382 (1978) (citations omitted).
*1167 The requested instruction fails the factual component of this analysis. In order to satisfy that component of the Workman test, there must be substantial evidence that affirmatively indicates that manslaughter was committed to the exclusion of first or second degree murder. See State v. Berlin, 133 Wash.2d 541, 551, 947 P.2d 700 (1997) (citing Beck v. Alabama, 447 U.S. 625, 635, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980)). "It is not enough that the jury might simply disbelieve the State's evidence. Instead, some evidence must be presented which affirmatively establishes the defendant's theory on the lesser included offense before an instruction will be given." State v. Fowler, 114 Wash.2d 59, 67, 785 P.2d 808 (1990) (citing State v. Rodriguez, 48 Wash.App. 815, 820, 740 P.2d 904, review denied, 109 Wash.2d 1016 (1987)).
Perez-Cervantes contends that the jury could have inferred that manslaughter was committed because "a small knife, causing a small wound, which was successfully treated initially does not prove intent to kill," and that Perez-Cervantes "meant to assault Mr. Thomas, not kill." Br. of Appellant at 8-9. Perez-Cervantes cannot, however, overcome the presumption that an actor intends the natural and foreseeable consequences of his conduct. The State's evidence showed that Perez-Cervantes twice attacked Thomas with a knife, after Thomas had been kicked and beaten into submission. "A jury may infer criminal intent from a defendant's conduct where it is plainly indicated as a matter of logical probability." State v. Myers, 133 Wash.2d 26, 38, 941 P.2d 1102 (1997). In short, there was no evidence that affirmatively established that Perez-Cervantes acted recklessly or with criminal negligence in plunging the blade of his knife into Thomas. Whatever Perez-Cervantes' subjective intent, his objective intent to kill was manifested by the evidence admitted at trial. His requested instructions rested on the theory that the jury might disbelieve some of the evidence indicating his intent to kill, and find, by default, that he must have acted with recklessness or criminal negligence. This is not enough. See State v. Berlin, 133 Wash.2d at 546, 947 P.2d 700. The trial court properly refused to give Perez-Cervantes' requested instruction.
In his pro se supplemental brief, Perez-Cervantes makes additional claims of error, as follows: (1) he was unconstitutionally prevented from testifying in his own behalf; (2) his counsel was ineffective; (3) the trial court improperly admitted testimony of two witnesses; (4) the trial judge was biased against him; and (5) there was insufficient evidence to support his conviction.
Each of these claims is fundamentally flawed and deserves little discussion from this court in light of the fact that his brief contains only the barest of conclusory allegations. With respect to the first two assertions, Perez-Cervantes fails to make the factual showing required to compel further inquiry into whether he was denied either the right to testify, State v. Robinson, 138 Wash.2d 753, 760, 982 P.2d 590 (1999), or the right to effective assistance of counsel. State v. Aho, 137 Wash.2d 736, 745, 975 P.2d 512 (1999) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).
With respect to the third claim, Perez-Cervantes asserts that the trial court erred in admitting the testimony of two of the State's witnesses. Specifically, he contends that the testimony of the witnesses was not credible because they were "under the influence of drugs" and their testimony was hearsay. Supplemental Br. of Appellant at 5. Because there was no objection to any of this testimony at trial, Perez-Cervantes may not now be heard to object. RAP 2.5(a); State v. Riley, 121 Wash.2d 22, 31, 846 P.2d 1365 (1993). Moreover, Perez-Cervantes does not make any concrete allegations to demonstrate why the trial court abused its discretion in admitting the clearly relevant, though damaging, testimony of the two witnesses. He also fails to specify which aspects of the testimony was hearsay. For those reasons and because credibility determinations are properly the province of the jury, State v. Bencivenga 137 Wash.2d 703, 974 P.2d 832 (1999), we conclude that there was no error in admitting this testimony.
Perez-Cervantes' claim that the trial court was biased against him deserves no *1168 discussion because it is totally unsupported by any citation to the record. Finally, the claim that the evidence was insufficient to support his conviction fails because, assuming the truth of the State's evidence of guilt, a rational trier of fact could find each of the essential elements of second degree murder. State v. Hickman, 135 Wash.2d 97, 103, 954 P.2d 900 (1998).

IV.
In sum, we hold that the trial court committed none of the errors that Perez-Cervantes claims it made. The Court of Appeals is, therefore, reversed and the judgment of the trial court is reinstated.
GUY, C.J., TALMADGE, IRELAND, and BRIDGE, JJ., concur.
JOHNSON, J. (dissenting).
There is no question about the established rules of law that are pertinent to this case the majority simply does not apply them. The State bears the burden to prove all elements of the crime charged beyond a reasonable doubt. Cause of death is an element of the crime of murder, and cause of death is an issue of fact that must be decided by the jury. There is absolutely no authority for a trial judge to decide that intentional ingestion of potentially lethal amounts of cocaine and heroin cannot, as a matter of law, serve as a valid intervening cause. The cases cited by the majority are almost exclusively sufficiency of the evidence challenges and in no way stand for this proposition. I would affirm the well reasoned decision of the Court of Appeals.
"Under the due process provisions of the Fifth and Fourteenth Amendments of the United States Constitution, the State must prove every element of an offense beyond a reasonable doubt." State v. Lively, 130 Wash.2d 1, 11, 921 P.2d 1035 (1996). A causal nexus between the death of the victim and the criminal agency or conduct of the defendant is an essential element of murder. See, e.g., State v. Berlin, 133 Wash.2d 541, 550, 947 P.2d 700 (1997). In crimes, such as murder, which are defined to require specific conduct resulting in a specific effect, the State must prove the defendant's criminal act was both the "cause in fact" and the "legal" cause of the result. State v. Rivas, 126 Wash.2d 443, 453, 896 P.2d 57 (1995); State v. Dennison, 115 Wash.2d 609, 624, 801 P.2d 193 (1990). "`Cause in fact refers to the "but for" consequences of an act-the physical connection between an act and an injury.'" Dennison, 115 Wash.2d at 624, 801 P.2d 193 (quoting Hartley v. State, 103 Wash.2d 768, 778, 698 P.2d 77 (1985)). When an unforeseeable act breaks the causal connection between the original act and the injury, such "intervening cause" may excuse a defendant from legal accountability. State v. Little, 57 Wash.2d 516, 522, 358 P.2d 120 (1961); State v. Lovelace, 77 Wash.App. 916, 919, 895 P.2d 10 (1995).
Cause of death is a question of fact. State v. Engstrom, 79 Wash.2d 469, 476, 487 P.2d 205 (1971). As such, it must be evaluated by the jury, who is the "`sole and exclusive judge of the evidence, the weight to be given thereto, and the credibility of witnesses.'" State v. Fernandez-Medina, 141 Wash.2d 448, 460, 6 P.3d 1150 (2000) (quoting State v. Bencivenga, 137 Wash.2d 703, 709, 974 P.2d 832 (1999)); see State v. Strasburg, 60 Wash. 106, 119, 110 P. 1020 (1910); Strasburg, 60 Wash. at 133, 110 P. 1020 (Morris, J., concurring) (constitutional error to remove consideration of questions of fact from the jury); United States v. Main, 113 F.3d 1046, 1050 (9th Cir.1997) (causation is an issue of fact and its removal from the jury's consideration is reversible error). Here, the trial judge allowed the State to fully argue its theory of causation but prevented the defense from rebutting those arguments and admonished the defense for attempting to do so. This impermissibly tainted the jury's consideration of causation.
"Counsel are permitted latitude to argue the facts in evidence and reasonable inferences." State v. Smith, 104 Wash.2d 497, 510, 707 P.2d 1306 (1985); see also State v. Ng, 104 Wash.2d 763, 778, 713 P.2d 63 (1985); State v. Kroll, 87 Wash.2d 829, 846, 558 P.2d 173 (1976); State v. Woolfolk, 95 Wash.App. 541, 547-48, 977 P.2d 1 (1999). Here, there was ample evidence from which defense *1169 counsel could have argued the State had failed to meet its burden on the element of causation. The testimony of Thomas' longtime girl friend established he had a history of drug abuse dating back to 1975. The testimony of the Pierce County medical examiner placed the following additional facts into evidence: (1) toxicology reports performed after Thomas' death revealed potentially life threatening amounts of cocaine and morphine in his system; (2) cocaine raises a person's blood pressure; (3) Thomas was stable and no longer bleeding upon discharge from the hospital; (4) after his discharge, Thomas' blood pressure became elevated due to cocaine in his system, thus causing him to begin bleeding again; and (5) according to Thomas' death certificate, cocaine and morphine use were factors contributing to his death. In light of the testimony of both these witnesses, it is inconceivable the majority can conclude there was no evidence in the record from which the jury could infer Thomas' drug abuse "constituted a subsequent, proximate cause that Perez-Cervantes could not have reasonably anticipated." Majority at 1165.
The majority largely rests its holding on the fact the medical examiner, although testifying to all the facts noted above, then offered his opinion that Thomas' drug abuse, while a contributing factor to his death, was not the "cause of death." Majority at 1165. The medical examiner's opinion, however, by its very nature went only to the medical cause of death, and not the legal cause of death. Under the Rules of Evidence, the doctor would be forbidden to offer an opinion as to the legal cause of the victim's death. ER 704 cmt. (noting "experts are not to state opinions of law....); Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d 299, 344, 858 P.2d 1054 (1993).
The medical examiner's opinion was, therefore, hardly dispositive of the issue of causation. While medical causation may be offered as a component of expert opinion, legal causation is for the trier of fact to determine.
The cause of death is a question of fact for the jury to decide from all the facts and circumstances. It is generally customary to introduce expert medical testimony to establish the cause of death; however, proof thereof need not be confined to that character of testimony.
Engstrom, 79 Wash.2d at 476, 487 P.2d 205 (citing State v. Bozovich, 145 Wash. 227, 259 P. 395 (1927); L.S. Tellier, Annotation, Necessity, in Homicide Prosecution, of Expert Medical Testimony to Show Cause of Death, 31 A.L.R.2d 693 (1953)); see also State v. Childs, 8 Wash.App. 388, 391, 506 P.2d 869 (1973) (noting "proof of the cause of death does not depend solely upon expert medical testimony"); 31A Am.Jur.2d Expert and Opinion Evidence § 258, at 258-59 (1989). Thus, regardless of whether the medical examiner labeled the cocaine in the victim's system as a medical "cause" or "contributing factor," it was for the jury to assign the proper weight to that testimony and draw any inferences from the facts in the record.
The majority also strays from the mark by overwhelmingly relying on cases where this court has rejected sufficiency of the evidence challenges to jury verdicts. Majority at 1164-65; see also State v. Leech, 114 Wash.2d 700, 704, 790 P.2d 160 (1990) (defendant claimed on appeal that death did not occur in "furtherance of the arson as required by the felony murder statute"); Little, 57 Wash.2d 516, 358 P.2d 120 (defendant claimed on appeal jury was not warranted in concluding his actions were the proximate cause of the victim's death); State v. Karsunky, 197 Wash. 87, 92, 84 P.2d 390 (1938) (defendant claimed on appeal that evidence was insufficient to sustain conviction); State v. Richardson, 197 Wash. 157, 165, 84 P.2d 699 (1938) (defendant claimed on appeal that corpus delicti of murder had not been satisfied and evidence was insufficient to uphold conviction). In these cases, it was merely alleged that the jury's verdict was erroneous because the defendant's acts were not the proximate cause of the victim's death due to intervening acts such as medical malpractice. In none of these cases, however, was it even suggested the defense had been completely precluded from arguing to the jury that the defendant did not cause the death of the victim. These cases, therefore, merely establish that a jury verdict will not fail on *1170 sufficiency of the evidence grounds due to an alleged intervening cause; these cases are hardly authority for the trial judge to rule, as a matter of law, that the defense could not dispute causation to the jury.
Only two cases mentioned by the majority do not involve sufficiency of the evidence challenges, but they nonetheless provide no support for the majority's holding. State v. Yates, 64 Wash.App. 345, 824 P.2d 519 (1992), concerned a dispute over the wording of a jury instruction on cause of death where life support had been removed from the victim. The jury was fully instructed on proximate cause "and those instructions gave Yates a proper basis from which to argue his case to the jury." Yates, 64 Wash.App. at 352, 824 P.2d 519 (emphasis added).
State v. Baruth, 47 Wash. 283, 91 P. 977 (1907), might lend some support to the majority's position were this a case involving negligent acts of medical malpractice in the treatment of Thomas' wound. In Baruth, this court affirmed the trial court's sustaining of an objection to defense cross examination of a doctor where the defense sought to elicit that the victim might have survived had he received better medical treatment. Baruth, 47 Wash. at 296-97, 91 P. 977. The Baruth court merely restated the already well established rule that ordinary medical negligence in the treatment of the wound inflicted is not a defense to murder. Baruth, 47 Wash. at 296, 91 P. 977 ("Where one unlawfully inflicts upon the person of another a wound calculated to endanger or destroy life, it is no defense to a charge of murder where death ensues to show that the wounded person might have recovered if the wound had been more skillfully treated.").
The rule stated in Baruth, however, is limited to cases involving medical negligence because medical negligence is considered foreseeable as a matter of law. This rule does not apply to grossly negligent acts, or to intentional acts, especially when those acts are committed by the victim. LaFave and Scott describe this distinction in their treatise on criminal law:
The most common case [of intervening cause] involves the negligent treatment of wounds by a doctor or nurse. A, intending to kill B, merely wounds him; but the doctor so negligently treats the wound that B dies. It is generally held that A is guilty of murdering B, i.e., that A's act legally caused B's death, unless the doctor's treatment is so bad as to constitute gross negligence or intentional malpractice. In short, mere negligence in medical treatment is not so abnormal that the defendant should be freed of liability.
1 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 3.12, at 408-09 (1986) (emphasis added) (citations omitted); see also People v. Saavedra-Rodriguez, 971 P.2d 223, 225-27 (Colo.1998) (distinguishing between ordinary negligence and gross negligence or intentional acts for purposes of causation in homicide case).
In examining this rule of law, it is apparent it does not support the result urged by the majority. This case does not involve negligent medical treatment by Thomas' physicians; it does not involve medical malpractice at all. Instead, this case involves Thomas' voluntary and intentional ingestion of illegal and possibly life threatening controlled substances. While, indisputably, the jury would be entitled to find these acts were foreseeable to Perez-Cervantes and, therefore, did not break the chain of causation, the trial judge had no authority to prevent the defense from arguing this factual issue to the jury.
This exact point was made recently by the Ninth Circuit in a case involving alleged instructional error on the issue of cause of death. See Main, 113 F.3d at 1050. In Main, the defendant was charged with involuntary manslaughter stemming from the death of a passenger in an automobile accident. The accident allegedly resulted from the defendant's driving while intoxicated. Main, 113 F.3d at 1047. After the accident, but before the passenger died, a deputy sheriff arrived on the scene, observed the passenger lying in a fetal position, believed the passenger was still breathing and, therefore, elected not to move him. Main, 113 F.3d at 1047. The passenger's death was later attributed to lack of oxygen, along with alcohol in his bloodstream and head trauma sustained in the crash. Main, 113 F.3d at 1048.
*1171 In responding to the claim the jury was improperly instructed on causation, the court noted "[w]hether [the passenger's] death was within the risk created by [the defendant's] conduct is a factual question, a question of the kind that a jury is peculiarly qualified to answer." Main, 113 F.3d at 1049. The court then concluded:
It will be said that a failure to get prompt medical attention is not an unlikely hazard for the victim of an automobile accident. Agreed. But that judgment remains a judgment of fact, a judgment that is in the province of the jury. When the jury is not told that it must find that the victim's death was within the risk created by the defendant's conduct an element of the crime has been erroneously withdrawn from the jury.
Main, 113 F.3d at 1050 (citing Harmon v. Marshall, 69 F.3d 963, 965-66 (9th Cir. 1995)).
Although the jury was instructed on proximate cause in the present case, the prosecutor told the jury in its closing argument that cause of death was "not disputed," and the defense was prohibited from answering that assertion. Thus, far from being "told that it must find that the victim's death was within the risk created by the defendant's conduct," Main, 113 F.3d at 1050, the jury here was misled to believe this inquiry was already completed.
In examining the trial court's refusal to allow the defense to present any argument on cause of death, we must also remember a defendant has a right to "`a meaningful opportunity to present a complete defense.'" Crane v. Kentucky, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (quoting California v. Trombetta, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)).
[T]he right to the assistance of counsel has been understood to mean that there can be no restrictions upon the function of counsel in defending a criminal prosecution in accord with the traditions of the adversary factfinding process that has been constitutionalized in the Sixth and Fourteenth Amendments....
There can be no doubt that closing argument for the defense is a basic element of the adversary factfinding process in a criminal trial.
Herring v. New York, 422 U.S. 853, 857-58, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975) (invalidating statute precluding defense from making closing argument). "Accordingly, it has universally been held that counsel for the defense has a right to make a closing summation to the jury, no matter how strong the case for the prosecution may appear to the presiding judge." Herring, 422 U.S. at 858, 95 S.Ct. 2550; see also Woolfolk, 95 Wash. App. at 547, 977 P.2d 1 ("[c]losing argument is perhaps the most important aspect of advocacy in our adversarial criminal justice system.").
The majority correctly states that the trial judge retains discretionary authority over certain aspects of closing argument, but this authority is limited in its scope:
It is the duty of the court, in all cases, to restrict the argument of counsel to the facts in evidence, and not to permit the opposite party to be prejudiced by any statement of facts not a part of the evidence. But counsel must be allowed some latitude in the discussion of their causes before the jury, and if they are not permitted to draw inferences or conclusions from the particular facts in evidence it would be impossible for them to make an argument at all. The mere recital of facts already before the jury is not an argument. There must be some reason offered for the purpose of convincing the mind, some inference drawn from the facts established or claimed to exist, in order to constitute an argument.
Woolfolk, 95 Wash.App. at 548, 977 P.2d 1 (emphasis added) (quoting Sears v. Seattle Consolidated St. Ry. Co., 6 Wash. 227, 233, 33 P. 389, 33 P. 1081 (1893)).
The proper application of the trial judge's discretionary authority over closing argument is illustrated perfectly by the cases cited by the majority. See majority at 1164. For example, the majority cites State v. Cecotti, 31 Wash.App. 179, 183, 639 P.2d 243 (1982), a case involving the limitation of defense closing argument to 30 minutes. The majority also relies on State v. Costello, 29 *1172 Wash. 366, 371, 69 P. 1099 (1902) and State v. Bokien, 14 Wash. 403, 416, 44 P. 889 (1896). Both these cases involve the trial judge's overruling of defense objections to aspects of the State's closing argument.
Accordingly, while it is within the trial judge's discretion to limit the duration of summation or determine the propriety of the State's mode of argument, a trial judge may not exclude defense arguments unless the arguments misrepresent the evidence or the law, introduce irrelevant or prejudicial matters, or otherwise confuse the jury. Woolfolk, 95 Wash.App. at 549, 977 P.2d 1 (citing United States v. DeLoach, 504 F.2d 185, 189 (D.C.Cir.1974)). As noted this year by the Massachusetts Court of Appeals in an analogous case, "[h]owever broad the discretion of the trial judge may be to limit the scope of closings so as to guard against repetitive, redundant, and otherwise improper arguments to the jury, such power cannot extend to total preclusion of relevant arguments that `remain within the bounds of the evidence and the fair inferences from the evidence.'" Commonwealth v. Cutty, 47 Mass.App.Ct. 671, 675, 715 N.E.2d 1040 (1999) (citation omitted) (quoting Commonwealth v. Pettie, 363 Mass. 836, 840, 298 N.E.2d 836 (1973)). Put another way, "[t]he court cannot compel counsel to reason logically or draw only those inferences from the given facts which the court believes to be logical." City of Seattle v. Arensmeyer, 6 Wash.App. 116, 121, 491 P.2d 1305 (1971).
This point is also well illustrated by the Court of Appeals recent decision in Woolfolk. In Woolfolk, the defendant was convicted of possession of a controlled substance with intent to manufacture or deliver while armed with a firearm. Woolfolk, 95 Wash.App. at 543, 977 P.2d 1. Defense counsel wished to argue to the jury that Woolfolk had no knowledge of the gun, but was denied the opportunity to do so. The Court of Appeals reversed Woolfolk's conviction, stating the following:
There is evidence in the record from which an inference may be drawn that Woolfolk did not know about the gun.... Woolfolk was not prevented from reminding the jury of this evidence but was precluded from driving home the crucial point that if they believed Woolfolk when he said he did not know about the gun, then they should find that he was not armed. Woolfolk should not be precluded from arguing his theory of the case to the jury, and we find that the trial court erred in granting the State's motion in limine.
Woolfolk, 95 Wash.App. at 550, 977 P.2d 1.
In the present case, the trial court not only prevented the defense from arguing cause of death to the jury, but also allowed the State to tell the jury the issue was not in dispute. The Court of Appeals rightly held this to be error because due process "prohibits a trial judge in a criminal case from directing a verdict for the State on any element of the crime charged `regardless of how overwhelmingly the evidence may point in that direction.' " State v. Perez-Cervantes, 90 Wash.App. 566, 571, 952 P.2d 204 (1998) (quoting United States v. Martin Linen Supply Co., 430 U.S. 564, 573, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977) (citing State v. Delmarter, 68 Wash.App. 770, 776, 845 P.2d 1340 (1993))).
Cause of death is an element of the crime of second degree murder and a question ultimately to be determined by the trier of fact. It is, therefore, "a matter better left to the unanimous, contemporaneous assessment of twelve jurors than to the retrospective guesswork of a single judge acting `as a thirteenth juror.'" State v. West, 139 Wash.2d 37, 52, 983 P.2d 617 (1999) (Alexander, J., dissenting) (quoting State v. Williams, 96 Wash.2d 215, 227, 634 P.2d 868 (1981)). I would affirm the Court of Appeals, reverse the conviction, and remand the cause for further proceedings consistent with this opinion.
SMITH, MADSEN, and SANDERS, JJ., concur.
NOTES
[1] Unchallenged jury instructions become the law of the case. See State v. Ng, 110 Wash.2d 32, 39, 750 P.2d 632 (1988). Furthermore this was a standard jury instruction. See 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL § 25.03, at 278-80 (2d ed.1994).
[2] We note the dissent's vehement disagreement with this conclusion. In our view, the dissent ignores the fact that the law of this case regarding proximate causation was established by the proximate cause instruction that was read to the jury. Under that instruction, even if Thomas' drug use was a proximate cause of his death, Perez-Cervantes would not be relieved from liability so long as the stabbing was also a proximate cause of Thomas' death, which the jury clearly found it to be. Clearly, Thomas would not have died had he not been stabbed. Thus, the stab wound is a proximate cause of his death. Neither Perez-Cervantes nor the dissent points to any evidence that would raise any possibility that Thomas' drug use would have killed him independent of the stab wound.
[3] "A person is guilty of manslaughter in the first degree when ... [h]e [or she] recklessly causes the death of another person." RCW 9A.32.060(1)(a). "A person is guilty of manslaughter in the second degree when, with criminal negligence, he [or she] causes the death of another person." RCW 9A.32.070(1).