The bankruptcy court's disgorgement order is AFFIRMED.

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael MAIN, Defendant–Appellant.**

**No. 96–30139.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 11, 1996.

Decided May 12, 1997.

Anthony R. Gallagher, argued, Federal Defender, Great Falls, Montana, Kristina

Guest, on the brief, Third Year Law Student, Federal Defenders of Montana, for defendant-appellant.

Lori A. Harper, Assistant United States Attorney, Great Falls, Montana, for plaintiff-appellee.

Before: JOHN T. NOONAN, THOMPSON and KLEINFELD, Circuit Judges.

## OPINION

NOONAN, Circuit Judge.

Michael Vernon Main appeals his conviction of involuntary manslaughter on the Fort Belknap Indian reservation in violation of 18 U.S.C. § 1112. We hold that the district court erred in its instruction to the jury on causation and accordingly reverse the judgment of conviction.

### FACTS

At 1:30 a.m. on September 1, 1995 Deputy Sheriff Shawn Kovacich stopped a pickup truck for erratic driving and a broken tail light. He approached the driver's side and asked the names and ages of the persons in the front seat. They were Lonny Henderson, age 18, the driver; Mike Main, age 20; and Donald "Hanny" Cole, age 18. There was a strong smell of liquor and the speech of Main and Cole was slurred. Kovacich had seen both Main and Cole before. Main was a much larger man than Cole. He was wearing a baseball cap. Kovacich noted that Main was in the middle and Cole on the right hand side. All these observations occurred in the 59 seconds that Kovacich was at the driver's side of the truck, a time recorded on his video. The video was not working enough to get the conversation although it was working enough to show that the person in the middle seemed large on the screen.

Kovacich brought Henderson back to his patrol car to prepare a DUI charge, but left the keys to the truck in the ignition. While he was talking to Henderson and preparing the report, the truck suddenly took off. Kovacich gave pursuit. The speeds of the vehicles varied from 40 to 70 miles per hour. At one point the vehicles were abreast and Kovacich saw the person on the passenger side he believed to be Cole flip him off. He asked Henderson who was driving, and Henderson said "Hanny." Kovacich replied, "I thought he looked familiar."

Both Main and Cole had appeared to Kovacich to be Indians. The initial stop was about a mile from the Fort Belknap Reservation. Kovacich assumed that they were "running for the reservation," that is, attempting to get within the boundaries where they could not be arrested by the county police. After crossing into the reservation, the truck veered off the highway into a ditch where it continued for about 260 feet until it collided with an approach. The collision sent the truck airborne for approximately 135 feet.

A minute after the crash Kovacich was at the scene. Main had been thrown clear of the truck. Cole was inside, trapped in a kind of J-shaped or fetal position by the wreckage. Kovacich looked at him for about 11 seconds, thought that he was breathing, and did not move him because he thought he might have head or neck injuries that would be exacerbated by movement. Seven minutes later, when a tribal policeman had arrived, they moved Cole and found him to be dead. After the crash, Main was brought to the emergency room for treatment. His blood alcohol level was .353 (over three times the legal limit in the state of Montana). Some time after the accident Kovacich interviewed Henderson about the incident. At this time Kovacich did not identify the driver by name, but three times referred to "they" or "them" collectively without specifying the driver.

### PROCEEDINGS

Main was indicted for involuntary manslaughter, defined by 18 U.S.C. § 1112 as "the unlawful killing of a human being without malice ... [i]n the commission of an unlawful act not amounting to a felony...."

The defense moved in limine to introduce into evidence three citations of Cole, in February, 1995, April, 1995, and August, 1995, for eluding a police officer. The motion was opposed by the government and denied by the court.

Kovacich testified as, above summarized. The government's pathologist testified that the cause of Cole's death was "the lack of oxygen by being in such a position that he could not breathe properly." He added that contributing factors were the amount of alcohol in his blood and the head injury he'd sustained in the crash. [RT 61] The government presented Lawrence Henke, a patrolman with the Montana Highway Patrol, as an accident reconstructionist. On the basis of Deputy Kovacich's video of the truck just before the accident, of photographs of the scene and the truck after the accident, and an examination of the truck, Henke gave his sense of how the accident occurred: the vehicle had gone flying through the air, then the front of the vehicle first struck the ground. He testified that in view of the injuries Main received and his expulsion from the vehicle, Main was the driver.

The defense questioned Kovacich's identification of Main and Cole from past experience of them and questioned whether he had any formed opinion as to who the driver was until well after the event. The defense put on its own accident reconstructionist, Dr. Floyd Denman Lee, on the staff of the University of Montana. Using the video and photographs and the reports on the injuries of Main and Cole, Lee testified that in his view the vehicle had flipped over more than once while it was in the air, that the occupants had been moved about by the motion, that Cole had been first trapped by the steering wheel but ultimately was pinned against the back of the seat, while Main was not restrained in any way and ejected. He concluded that Main had been the passenger.

The defense asked the court to instruct the jury as follows:

Defendant Michael Vernon Main has pleaded "Not Guilty" to the charges in the Indictment. This plea of not guilty puts in issue each of the essential elements of the offenses described in these instructions and imposes on the Government the burden of establishing each of these elements by proof beyond a reasonable doubt.

An injury or damage is proximately caused by an act, or failure to act, whenever it appears from the evidence in the case that the act or omission played a substantial part in bringing about or actually causing the injury or damage, and that the injury or damage was either a direct result or a reasonable [sic] probable consequence of the act or omission.

Therefore, with respect to the third element that the government must prove, that is, that it was Michael Main who killed Donald Cole, you must find beyond a reasonable doubt that it was Michael Main's act which caused the death of Donald Cole. If you find that it was not his act which caused the death or you have a reasonable doubt as to whether Michael Main caused Donald Cole's death, you must find the defendant, Michael Main, not guilty.

The court refused to do so and instead instructed:

In order for the defendant, MICHAEL VERNON MAIN, to be found guilty of the offense of involuntary manslaughter, in violation of Section 1112 of Title 18 of the United States Code, as charged in the indictment, the Government must prove, beyond a reasonable doubt, each and every one of the following five essential elements:

* * *

THIRD: That Donald James Cole was killed as a result of an act of the defendant, MICHAEL VERNON MAIN.

The jury returned a verdict of guilty. Main appeals.

## ANALYSIS

### The Exclusion Of Cole's Three Convictions

The court excluded Cole's convictions stating, "I don't see how they are relevant or material. And under other acts, under 403, 404, they have a tendency to be terribly prejudicial, whichever way they are going." The court added, "As things come on, I might. . . . When it comes to making offers

and what not, I'll be glad to listen further." On appeal, Main argues that the evidence was relevant and admissible.

Main's argument comes too late. He failed to take up the trial court's invitation to renew his motion as the trial developed; he failed to accept the trial court's willingness to listen further. *United States v. Palmer,* 3 F.3d 300, 304 (9th Cir.1993); *United States v. Wood,* 943 F.2d 1048, 1054 (9th Cir.1991); *United States v. Lui,* 941 F.2d 844, 846 (9th Cir.1991); *United States v. Chu Kong Yin,* 935 F.2d 990 (9th Cir.1991).

Certainly the evidence was relevant. *United States v. Crosby* 75 F.3d 1343, 1347 (9th Cir.1996). Certainly the evidence was not prejudicial in the sense in which "prejudicial" is used in the law of evidence. Whether it was admissible, however, is a question on which the court is divided and, as the issue has not been properly preserved, we do not rule but note for the benefit of the district court and counsel that a fair argument for admissibility exists if Main is retried.

We turn to what is dispositive of this appeal.

### *The Instruction On Causation*

■ All of the authorities agree that to be guilty of involuntary manslaughter the harmful result must be within the risk foreseeably created by the accused's conduct; if the physical causation is too remote, the law will not take cognizance of it. "The same result has been achieved by requiring that the accused's conduct be a substantial factor in causing the harmful result or that it be the proximate, primary, direct, efficient, or legal cause of such harmful result." Charles E. Torcia, *Wharton's Criminal Law* § 26 at 148–151; *Cf.* § 170 (1993) (footnotes omitted). The thought is best expressed by the American Law Institute, which does not care for expressing the rule in terms of proximate cause but does require that "the actual result" of the unlawful behavior to be "not too remote or accidental in its occurrence to have a [just] bearing on the actor's liability or on the gravity of his offense." American Law Institute, Model Penal Code § 2.03(3)(b) (1985). The commentary indicates that this question is to be presented "to the jurors,"

American Law Institute, *Model Penal Code and Commentaries* § 2.03, comment 5 at 265 (1985).

There is a problem in using terms such as "probable" or "likely" in relation to manslaughter by excessive speed or drunk driving. It appears that many persons drive over the speed limit without killing or maiming anyone; if "probable" or "likely" implies more than a 50 percent chance of an event happening, a death caused by speed or alcohol is not probable or likely. There is, however, "a reasonable probability" of causing death. See *Kyles v. Whitley,* 514 U.S. 419, 434–35, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995) ("reasonable" is an important modifier of probability). Death is foreseeably within the risk created. It is because of the severity of the harm risked that law treats the intentional conduct of speeding or driving drunk as the crime of involuntary manslaughter when death is a consequence. But this severe penalty should be imposed only when death does in fact fall within the risk foreseeably created. Foreseeability is to be determined by what a reasonable person would foresee as a reasonable probability within the risk of the conduct engaged in.

Whether Cole's death was within the risk created by Main's conduct is a factual question, a question of the kind that a jury is peculiarly qualified to answer. The problem with the court's instruction is that it took what is a factual question away from the jury. It is not too difficult to offer hypotheticals where the error in the instruction would be plainer. Suppose Cole had been pinned in the wreck and then eaten by a bear. His death would have been the result of the wreck; but for Main's driving, he would not have been killed, yet a jury could find as a fact that the death was not within the risk that Main had created. In the language of the American Law Institute death from a bear was not within the risk foreseeably created by the reckless driving, Model Penal Code § 2.03(3). Another way of putting it is to say that the intervening cause was "so out-of-the-ordinary" that it is no longer fair to hold the defendant liable. Joshua Dressler, *Understanding Criminal Law* § 14.03(C) (1995).

It will be said that a failure to get prompt medical attention is not an unlikely hazard for the victim of an automobile accident. Agreed. But that judgment remains a judgment of fact, a judgment that is in the province of the jury. When the jury is not told that it must find that the victim's death was within the risk created by the defendant's conduct an element of the crime has been erroneously withdrawn from the jury. *Harmon v. Marshall,* 69 F.3d 963, 965–66 (9th Cir.1995) (citing *United States v. Gaudin,* 28 F.3d 943, 951 (9th Cir.1994) (en banc), *affirmed,* 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995)).

We recognize that our holding necessarily implies a lacuna in the Ninth Circuit's Model Criminal Jury Instructions. § 8.24D (1992), which the district court followed. We also appear to be in disagreement with *United States v. DeCoteau,* 516 F.2d 16, 17 (8th Cir.1975), although the full text of the jury instructions on which the court of appeals relied are not given in the opinion. We are fortified by our agreement with *United States v. Spinney,* 795 F.2d 1410, 1415 (9th Cir.1986): "A basic tenet of criminal law is that the government must prove that the defendant's conduct was the legal or proximate cause of the resulting injury. Causation in criminal law has two requirements: cause in fact and proximate cause." Once this basic tenet is acknowledged it is apparent that the question of proximate cause must go to the jury. It is not relevant that § 1112 does not expressly mention proximate cause. We have already decided that the essential elements of a crime covered by § 1112 are not all expressed in the statute but are, instead, implicit in the common understanding of the crime. *See United States v. Keith,* 605 F.2d 462, 463 (9th Cir.1979).

 As we have indicated, in involuntary manslaughter cases involving the speed of an automobile or driving under the influence, we believe the best formulation of this element for the jury will be as follows:

> The prosecution must prove that the defendant's act or omission was the proximate cause of the death of the victim. A proximate cause is one which played a substantial part in bringing about the death, so that the death was the direct result or a reasonably probable consequence of the defendant's speed or condition or manner of driving.

**REVERSED.**