**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 44542**

| | | |
|---|---|---|
| **MICHAEL JARED THOMPSON,** | ) | **2018 Opinion No. 5** |
| | ) | |
| **Petitioner-Appellant,** | ) | **Filed: February 20, 2018** |
| | ) | |
| **v.** | ) | **Karel A. Lehrman, Clerk** |
| | ) | |
| **STATE OF IDAHO,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Minidoka County. Hon. Jonathan P. Brody, District Judge.

Order of summary dismissal of petition for post-conviction relief, <u>reversed</u> and <u>case remanded</u>.

Nevin, Benjamin, McKay & Bartlett, LLP; Deborah A. Whipple, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Michael Jared Thompson appeals from the district court's order summarily dismissing his petition for post-conviction relief. Specifically, Thompson argues that his claims raise a genuine issue of material fact as to whether trial counsel was ineffective in basing the defense in an involuntary manslaughter case on the existence of an intervening, superseding cause without requesting proximate and intervening, superseding cause instructions. Similarly, Thompson argues he properly presented a prima facie case of ineffective assistance of appellate counsel for the failure to pursue the jury instruction issue on direct appeal. For the reasons explained below, the district court's order summarily dismissing Thompson's petition for post-conviction relief is reversed and the case is remanded for an evidentiary hearing.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

The factual background is derived from this Court's unpublished opinion on direct appeal:

> Four friends went out drinking at two local bars in Minidoka County. The victim, Michael Blair, and his longtime friend, Kristen Kull, began to argue. By this time all four individuals were highly intoxicated. Thompson became irritated by the arguing and decided that they should all leave. The four friends left in Thompson's truck. Thompson drove, Kull sat in the front passenger seat, Blair sat directly behind the driver's seat, and Khali Jones sat behind the front passenger seat. Blair and Kull continued to argue as they drove towards Thompson's house. Thompson interjected, "If one of you don't shut up, I'm going to shoot somebody." Jones could see that he had a gun in a holster. Blair laughed. Thompson responded, "You think I'm kidding?" He then removed the pistol from the holster and cocked the gun twice. Then holding the gun in his right hand, Thompson rested his elbow on the center console and pointed the gun up and backwards. Blair, who was known to be a jokester, responded, "If you're going to shoot somebody, it might as well be me. End my miserable existence." Blair then slid over, placed his hand on Thompson's hand, and put his mouth around the barrel of the gun; the gun fired. The shot likely killed Blair instantly. Thompson told the others that Blair pulled the trigger. Jones could not see whose finger was on the trigger and she did not know who pulled it. Kull could not remember what occurred that night.
>
> The State charged Thompson with involuntary manslaughter, with an enhancement for using a deadly weapon. After the above information was presented at trial, the jury found Thompson guilty as charged. The district court sentenced Thompson to fifteen years with five years determinate. Thompson subsequently filed an Idaho Criminal Rule 35 motion for leniency. The district court denied his motion.

*See State v. Thompson*, Docket No. 40796 (Ct. App. Nov. 7, 2014) (unpublished). On appeal, we affirmed Thompson's judgment of conviction and sentence for involuntary manslaughter with an enhancement for using a deadly weapon.

Thompson then filed a petition for post-conviction relief. Thompson's first claim in his petition was that his trial counsel was ineffective because he failed to request proximate cause and intervening, superseding cause jury instructions.[1] Thompson's second claim is not at issue.

---

[1]    The relevant jury instructions given were:

Instruction 10:
> In order for the defendant to be guilty of involuntary manslaughter by negligent use of a deadly weapon the state must prove each of the following:
> One, on or about December 16, 2011 and December 17, 2011;

Thompson's third claim was that his appellate counsel was ineffective in failing to adequately review the trial record and in failing to raise on appeal the issue of whether the district court's failure to instruct the jury on proximate and intervening, superseding cause constituted fundamental error.

In its motion for summary dismissal, the State responded to Thompson's first claim by asserting that the jury was properly instructed on the law. The State argued that it was not required to prove or establish that Thompson's actions were the proximate cause of the victim's death, only that Thompson operated "any firearm or deadly weapon in a reckless, careless or negligent manner which produces death." According to the State, it would not matter if the deceased was the one who pulled the trigger because "introducing" the weapon in an unstable situation in which somebody dies due to that weapon constitutes the crime. The State also argued that "the giving of a jury instruction regarding proximate cause, as a matter of law, would not have altered the verdict."

The district court agreed with the State that the giving of a proximate cause jury instruction would not have altered the verdict, but declined to rule that proximate cause was not required under the statute. The district court reasoned that although Idaho Code § 18-4006(2), the statute defining involuntary manslaughter, does not expressly require the proof of proximate cause, the plain meaning analysis of the term "produces" in the statute requires a finding by the jury that the person convicted produced--or caused--the death. The district court further explained that because the jury was instructed as to causation, as it was implied in the term "produces," it is unclear why an additional jury instruction addressing proximate cause was

---

Two, in the state of Idaho;

Three, the defendant Michael Jared Thompson used a firearm with reckless disregard of the consequences and of the rights of others.

Four, producing the death of [the deceased].

If any of the above has not been proven beyond a reasonable doubt you must find the defendant not guilty. If each of the above has been proven beyond a reasonable doubt then you must find the defendant guilty.

Instruction 10A:

The defendant Michael Jared Thompson is charged in this case with involuntary manslaughter. Manslaughter is the unlawful killing of a human being without malice. In charging the defendant with involuntary manslaughter the state must prove beyond a reasonable doubt: One, that a death occurred, and; Two, the defendant unlawfully caused that death.

necessary or would have changed the outcome. Moreover, the district court found that Thompson had failed to demonstrate that any prejudice would have resulted from trial counsel's failure to propose proximate cause or intervening, superseding cause jury instructions. Thompson appeals from the district court's summary dismissal of his petition for post-conviction relief.

## II.

## STANDARD OF REVIEW

A petition for post-conviction relief initiates a proceeding that is civil in nature. Idaho Code § 19-4907; *Rhoades v. State*, 148 Idaho 247, 249, 220 P.3d 1066, 1068 (2009); *State v. Bearshield*, 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Murray v. State*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct. App. 1992). Like a plaintiff in a civil action, the petitioner must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). A petition for post-conviction relief differs from a complaint in an ordinary civil action. *Dunlap v. State*, 141 Idaho 50, 56, 106 P.3d 376, 382 (2004). A petition must contain much more than a short and plain statement of the claim that would suffice for a complaint under I.R.C.P. 8(a)(1). Rather, a petition for post-conviction relief must be verified with respect to facts within the personal knowledge of the petitioner, and affidavits, records, or other evidence supporting its allegations must be attached or the petition must state why such supporting evidence is not included with the petition. I.C. § 19-4903. In other words, the petition must present or be accompanied by admissible evidence supporting its allegations, or the petition will be subject to dismissal. *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011).

Idaho Code Section 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715

4

P.2d 369, 372 (Ct. App. 1986). Moreover, the district court, as the trier of fact, is not constrained to draw inferences in favor of the party opposing the motion for summary disposition; rather, the district court is free to arrive at the most probable inferences to be drawn from uncontroverted evidence. *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Id.*

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009). Thus, summary dismissal of a claim for post-conviction relief is appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in the petitioner's favor. For this reason, summary dismissal of a post-conviction petition may be appropriate even when the State does not controvert the petitioner's evidence. *See Roman*, 125 Idaho at 647, 873 P.2d at 901.

Conversely, if the petition, affidavits, and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008). If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Goodwin*, 138 Idaho at 272, 61 P.3d at 629.

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Sheahan*, 146 Idaho at 104, 190 P.3d at 923. Over questions of law, we exercise free review. *Rhoades*, 148 Idaho at 250, 220 P.3d at 1069; *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001).

## ANALYSIS

### A. Ineffective Assistance of Trial Counsel

A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Barcella v. State*, 148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Knutsen*, 144 Idaho at 442, 163 P.3d at 231. This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011).

### 1. Proximate cause

Thompson asserts that proximate and intervening, superseding cause instructions were required, and his trial counsel was therefore ineffective by failing to request them. On appeal, the State has renewed its argument that proximate cause is simply not an element of manslaughter in Idaho.[2] The State also argues that even if proximate cause is an element,

---

[2]    The State's argument can be best summarized in its own words:

The relevant jury instruction, no. 10, was patterned on the statutory language (see Aug. R., p. 187), and so could not be erroneous. *State v. Aragon*, 107 Idaho 358, 362, 690 P.2d 293, 297 (1984). Under the plain language of the statute, the only causation the jury was required to consider was whether Thompson's reckless use of the firearm produced his victim's death. Questions of proximate and intervening causes were not relevant to the jury's determination.

. . . .

. . . At one time, a finding of proximate causation was necessary to sustain a conviction for vehicular manslaughter. . . . But Thompson was not charged with vehicular manslaughter; he was charged with involuntary manslaughter through

Thompson failed to introduce evidence at trial that would have required the jury to consider proximate cause and intervening, superseding causes, meaning it was not deficient to not request proximate and intervening, superseding cause instructions. The State further asserts that any deficiency was not prejudicial, relying on the district court's conclusions that there was no intervening, superseding cause and that "produces" implies causation, which includes proximate cause.

The relevant portions of the current statute are the operative language, as well as the subsection defining how involuntary manslaughter can be committed:

> Manslaughter is the unlawful killing of a human being including, but not limited to, a human embryo or fetus, without malice. It is of three (3) kinds:
> (1) Voluntary . . . .
> (2) Involuntary--in the perpetration of or attempt to perpetrate any unlawful act, other than those acts specified in section 18-4003(d), Idaho Code; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection; or in the operation of any firearm or deadly weapon in a reckless, careless or negligent manner which produces death.
> (3) Vehicular . . . .

This Court exercises free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight*, 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d

---

the reckless operation of a firearm, and the proximate cause requirement for vehicular manslaughter has never been applied to cases of involuntary manslaughter committed through the reckless operation of a firearm.

. . . .

. . . Thompson was charged under the current statute with involuntary manslaughter through the reckless operation of a firearm. The only question of causation relevant to the jury's determination was whether Thompson's reckless operation of the firearm produced his victim's death. The state was not required to prove proximate causation.

at 67. When this Court must engage in statutory construction because an ambiguity exists, it has the duty to ascertain the legislative intent and give effect to that intent. *State v. Beard*, 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct. App. 2001). To ascertain such intent, not only must the literal words of the statute be examined, but also the context of those words, the public policy behind the statute and its legislative history. *Id.* It is incumbent upon a court to give an ambiguous statute an interpretation which will not render it a nullity. *Id.* Constructions of an ambiguous statute that would lead to an absurd result are disfavored. *State v. Doe*, 140 Idaho 271, 275, 92 P.3d 521, 525 (2004).

Although Idaho Code Section 18-4006(2), the statute defining involuntary manslaughter, does not expressly require proof of proximate cause, the plain meaning of the term "produces" in the statute indicates that the death was caused by the actions of the person convicted. *See State v. Lampien*, 148 Idaho 367, 374, 223 P.3d 750, 757 (2009) (the phrase "as the result of" in Idaho Code Section 19-5306(5)(a) indicates that the victim's injuries must have been caused by the commission of the crime). As stated in *State v. Corbus*, 150 Idaho 599, 602-03, 249 P.3d 398, 401-02 (2011):

> As articulated by this Court in *Lampien*, causation consists of actual cause and true proximate cause. *Lampien*, 148 Idaho at 374, 223 P.3d at 757. "Actual cause is the factual question of whether a particular event produced a particular consequence." *Id.* (quoting *Cramer*, 146 Idaho at 875, 204 P.3d at 515). The "but for" test is used in circumstances where there is only one actual cause or where two or more possible causes were not acting concurrently. *Id.* On the other hand, true proximate cause deals with "whether it was reasonably foreseeable that such harm would flow from the negligent conduct." *Id.* (quoting *Cramer*, 146 Idaho at 875, 204 P.3d at 515). In analyzing proximate cause, this Court must determine whether the injury and manner of occurrence are so highly unusual "that a reasonable person, making an inventory of the possibilities of harm which his conduct might produce, would not have reasonably expected the injury to occur." *Id.* (quoting *Cramer*, 146 Idaho at 875, 204 P.3d at 515).
>
> An intervening, superseding cause is "an independent act or force that breaks the causal chain between the defendant's culpable act and the victim's injury." *Id.* In general, an intervening, superseding cause replaces the defendant's act as the proximate cause of the victim's injury. *Id.* at 374-75, 223 P.3d at 757-58. However, to relieve a defendant of criminal liability, an intervening cause must be an unforeseeable and extraordinary occurrence. *Id.* at 375, 223 P.3d at 758. "The defendant remains criminally liable if either the possible consequence might reasonably have been contemplated or the defendant should have foreseen the possibility of harm of the kind that could result from his act." *Id.*

8

Moreover, while no Idaho appellate case has expressly addressed the issue of proximate cause in the involuntary manslaughter context and/or construed the term "produces," most jurisdictions that have addressed the issue have concluded that proximate cause is an implied element. *See United States v. Main*, 113 F.3d 1046, 1048-50 (9th Cir. 1997) (explaining that though the federal manslaughter statute does not explicitly mention proximate cause, proximate cause is an element that is implicit in the common understanding of the crime); *see also Dunville v. State*, 123 N.E. 689, 689-90 (Ind. 1919) (explaining that though contributory negligence could not serve as a defense to involuntary manslaughter, the victim's actions may still be relevant to show lack of proximate cause); *Jackson v. State*, 127 N.E. 870, 870 (Ohio 1920) (highlighting the "illogical and absurd results" that would follow from a rule that did not require proximate cause for involuntary manslaughter); *cf. Ex parte Heigho*, 18 Idaho 566, 574-77, 110 P. 1029, 1032 (1910) (implicitly addressing proximate cause as it related to Idaho's manslaughter statute). Thus, we hold that proximate cause is an element within the statute.

## 2.     Deficient performance

The State asserts that because the jury instruction was patterned on the language of I.C. § 18-4006, it cannot be erroneous. Though jury instructions patterned after the language of a statute normally are not error, that rule is not absolute. *State v. Aragon*, 107 Idaho 358, 362, 690 P.2d 293, 297 (1984). The Idaho Supreme Court has explained that jury instructions that deviate from the explicit language of the statute may be required depending on the specific facts of the case. *See State v. Abdullah*, 158 Idaho 386, 427-29, 348 P.3d 1, 42-44 (2015) ("Based on our interpretation of Idaho's arson statute, we recognize that in subsequent arson prosecutions an instruction on causation may be necessary depending on the facts of the case."); *see also Main*, 113 F.3d at 1050 ("We recognize that our holding [that there is an implied element of proximate cause] necessarily implies a lacuna in the Ninth Circuit's Model Criminal Jury Instructions § 8.24D (1992), which the district court followed.").[3] While infrequent, instructions deviating from the language of the statute may be required when implied elements are at issue due to the

---

[3]     In *United States v. Main*, 113 F.3d 1046, 1048 (9th Cir. 1997), the district court had refused to include proximate cause language in the manslaughter jury instructions, instead using the following phrasing, "[The victim] was killed as a result of an act of the defendant." The Ninth Circuit reversed, acknowledging that the federal manslaughter statute does not explicitly mention proximate cause, but explaining that proximate cause is an element that is implicit in the common understanding of the crime. *Id.* at 1050; *see* 18 U.S.C. § 1112(a).

9

specific facts of a case. Therefore, while it may be proper to simply instruct using the language of the statute, where causation is at issue, as in this case, further instruction on actual and proximate cause, as well as intervening, superseding cause, may not only be appropriate, but required.

Turning to the district court's decision granting summary dismissal of this case, the district court ruled that "Thompson provides no additional information in his petition showing that he did not behave in a 'reckless, careless or negligent manner' by introducing a loaded gun into an argument in a confined space." This statement actually goes only so far as to address the third element in the given instruction no. 10: "Three, the defendant Michael Jared Thompson used a firearm with reckless disregard of the consequences and of the rights of others." The element at issue is the fourth element in the instruction: "Four, producing the death of [the deceased]." In addition, the district court's analysis in this regard goes beyond the proper boundaries of summary dismissal. The court notes that "the story of what occurred after the introduction of the firearm varies" and then simply focuses on the recklessness of Thompson to conclude that the victim's conduct was not an intervening, superseding cause, as the conduct was neither unforeseeable nor extraordinary under the entirety of the circumstances. Thus, the district court appears to have engaged in a factual analysis, inappropriate on summary dismissal, to come to the legal conclusion that an instruction on intervening, superseding cause would not be appropriate, as no conduct of the victim "broke the chain of proximate causation." An evidentiary hearing is necessary to resolve this issue.

Additionally, the district court ruled that instructing the jury that Thompson's conduct must have "produced" the death of the victim is the same as providing definitional instructions on causation and/or intervening, superseding cause. The court stated that the instructions given required the jury to find that "the person convicted produced--or caused--the death," which it did. Thus, the court concluded that it was unclear why additional instruction would be necessary or would change the outcome. First, as noted, jury instructions supplementary to the explicit language of the statute may be required depending on the specific facts of the case. *Abdullah*, 158 Idaho at 427-29, 348 P.3d at 42-44. Second, the issue is, under the circumstances and the nature of the defense, would jury instructions defining causation and intervening, superseding cause have assisted the jury to the extent that failing to request them constitutes ineffective assistance of counsel. *See Butigan v. Yellow Cab Co.*, 320 P.2d 500, 505 (Cal. 1958) ("The rules

10

concerning negligence and proximate causation which must be explained to the jury are in themselves complicated and difficult to understand."). An evidentiary hearing is necessary to address this issue.

### 3. Strategic and tactical decisions

When evaluating an ineffective assistance of counsel claim, this Court does not second-guess strategic and tactical decisions, and such decisions cannot serve as a basis for post-conviction relief unless the decision is shown to have resulted from inadequate preparation, ignorance of the relevant law, or other shortcomings capable of objective review. *State v. Payne*, 146 Idaho 548, 561, 199 P.3d 123, 136 (2008). Strategic decisions can include counsel's choice of witnesses, presentation of evidence, manner of cross-examination, and lack of objection to testimony. *Giles v. State*, 125 Idaho 921, 924, 877 P.2d 365, 368 (1994). However, trial counsel's failure to request a jury instruction made necessary by the specific facts of the case and intimately related to the defense's theory of the case may not fit the mold of "strategic decision" or "trial strategy." *See Wurdemann v. State*, 161 Idaho 713, 722, 390 P.3d 439, 448 (2017) (providing relevant factors courts should look to when determining whether a decision was strategic). Whether or not trial counsel's failure to request proximate cause and intervening, superseding jury instructions was strategic is a question to be addressed at an evidentiary hearing.

### 4. Prejudice

Finally, the district court held that there was no evidence that such jury instructions would have changed the outcome of the trial. First, the *Strickland* standard only requires a "reasonable probability" that the result would be different. Second, Thompson moved the court to take judicial notice of the records and transcripts of the underlying criminal trial. The court did not reference this "evidence" in its order summarily dismissing Thompson's petition, despite the fact that it is relevant to the prejudice element. The district court, in its decision, cited exclusively to Thompson's verified petition for post-conviction relief, Thompson's affidavit of material facts in support of his verified petition for post-conviction relief, and the State's motion. Moreover, the State's motion did not rely on facts outside of the affidavit of material facts or the fact section of this Court's opinion from Thompson's direct appeal.

Though it is possible for this Court to imply that a district court granted a party's motion for judicial notice without it officially stating that it did so, the facts in this case do not present

this approach as a viable option. *Fortin v. State*, 160 Idaho 437, 441 n.2, 374 P.3d 600, 604 n.2 (Ct. App. 2016) ("Although the district court did not directly address the state's motion in its order, the context of the district court's ruling, coupled with its declaration in its order summarily dismissing the petition that it took judicial notice of 'the underlying files that were made a part of the record in this case,' implies that the district court granted the state's motion for judicial notice."). Because we cannot imply that the motion was granted in this case, we remand to the trial court for an evidentiary hearing at which Thompson can develop a factual record of the underlying events and also trial counsel's reason for not objecting.

In sum, Thompson has made a prima facie case for ineffective assistance of counsel sufficient to warrant an evidentiary hearing. Instructions on proximate cause and intervening, superseding cause may be legally appropriate in an involuntary manslaughter case. However, whether consideration of all of the facts proves ineffective assistance of counsel for failing to request such instructions must be decided following an evidentiary hearing.

## B.     Ineffective Assistance of Appellate Counsel

Thompson invites us to address *Mintun v. State*, 144 Idaho 656, 662, 168 P.3d 40, 46 (Ct. App. 2007), in which we held that we will not hear a post-conviction claim of ineffective assistance of appellate counsel for failing to raise an issue of fundamental error, in light of subsequent appellate decisions. Because we are reversing the summary dismissal of Thompson's petition for post-conviction relief due to the ineffective assistance of trial counsel, we need not address this issue.

## IV.
## CONCLUSION

Thompson has made a prima facie showing that counsel performed deficiently by failing to request a jury instruction that may be applicable due to the specific facts of this case and that there exists a reasonable possibility that counsel's deficient performance affected the outcome of the trial. Accordingly, we conclude that Thompson is entitled to an evidentiary hearing. The district court's order of summary dismissal of Thompson's petition for post-conviction relief is reversed and the case remanded for an evidentiary hearing.

Judge HUSKEY **CONCURS**.

Judge GUTIERREZ **CONCURS IN THE RESULT.**